UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

YOWIE NATURAL WORLD, INC. et al,

                        Plaintiffs,

        – against –

WHETSTONE CHOCOLATE FACTORY, INC.
et al,

                        Defendants.

**ORDER TRANSFERRING VENUE TO
THE MIDDLE DISTRICT OF
FLORIDA**


16-cv-4320-ERK-RML

KORMAN, *J.*

        All defendants in this case have joined in a motion to transfer venue to the U.S. District

Court for the Middle District of Florida.  For the following reasons, that motion is GRANTED

## BACKGROUND

        I rely on the following facts as alleged in the pleadings: Plaintiff Yowie Group LTD is an

Australian corporation with its principle place of business in Perth, Australia. Yowie Group is a

confectioner, best known for its "Yowie" brand. The Yowie brand centers on characters known as

"Yowies." Yowie Group produces Yowie-branded chocolate toys, consisting of a hollow chocolate

shell containing a small plastic toy, wrapped in foil printed with an image of a Yowie character.

        As part of its effort to expand into the United States market, Yowie Group, through a

subsidiary, entered into a non-exclusive Manufacturing Agreement with the defendants,

Whetstone Chocolate Factory, Inc. ("WCF"), Atlantic Candy Company ("ACC") (both Florida

corporations headquartered in St. Augustine, Florida), and Henry Whetstone ("Whetstone") (a

citizen of Florida). The defendants agreed to manufacture Yowie chocolates using, in part, Whetstone's intellectual property relating to the manufacture of chocolate shells. Some time later, another subsidiary—plaintiff Yowie Natural World, Inc. (a Delaware corporation headquartered in Missouri, and collectively with Yowie Group, the "Yowie entities")—struck a deal with Madelaine, a New York-based chocolate maker, to have Madelaine manufacture Yowie products in New York. The agreement was negotiated in part at Madelaine's Far Rockaway, New York headquarters. During these negotiations, Yowie Group and its directors (all named as third-party defendants, and all citizens and residents of Australia) allegedly disclosed WCF's proprietary information to Madelaine, which Madelaine continues to use to make chocolates in Far Rockaway.

On learning of that agreement, Henry Whetstone allegedly began to harass Madelaine's CEO Jorge Faber, threatening to sue Madelaine if it manufactured Yowie products. Faber received at least one of these communications while he was in New York. The threats allegedly harmed the business relationship between Yowie Natural World and Madelaine, which necessitated multiple trips by Yowie Group executives from Australia to New York to manage the difficulties.

In December 2015, Yowie Group terminated its relationship with the defendants. But in February 2016, Yowie Group discovered that the defendants had made statements about Yowie, and allegedly provided images of Yowie-brand characters to Candy Industry, a trade publication published internationally and throughout the United States (including New York), with the intention of misleading readers into believing that the defendants were still affiliated with Yowie.

In March of 2016, an internet user believed to be Henry Whetstone or somebody affiliated with him made false and disparaging statements about Yowie on an online message board frequented by securities investors. The user falsely stated that a judge in a different lawsuit had found Yowie breached a contract. It also falsely stated that a Yowie candy-wrapping machine

remained at the WCF facility, and that WCF was using Yowie's equipment to produce chocolate for a competitor. These statements suggested to investors that by retaining the wrapping machine, Whetstone had increased its manufacturing capacity at the expense of Yowie's.

The Yowie entities filed suit in Queens County Supreme Court, and WCF removed the case to this court. The Yowie entities assert the following claims against all defendants: (1) tortious interference with the Yowie entities' business relationship with Madelaine, (2) violation of the Lanham Act by misappropriation of Yowie trademarks, and (3) defamation by making false statements intended to damage Yowie's reputation among investors. In addition, WCF has counterclaimed against Yowie Group and its three directors (impleaded as third-party defendants) for breach of a non-disclosure clause in the Manufacturing Agreement.

## DISCUSSION

A defendant seeking transfer pursuant to 28 U.S.C. § 1404(a) has the burden of producing clear and convincing evidence showing that transfer is warranted. *N.Y. Marine & Gen. Life Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010). The parties do not dispute that this case could have been brought in the Middle District of Florida, so the only issue is whether transfer is appropriate for the convenience of the parties and witnesses. In making that judgment, the Second Circuit has stated that I should consider the following factors: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel unwilling witnesses and (6) the relative means of the parties. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–7 (2d Cir. 2006).

1.    Plaintiff's Choice of Forum & 2. Locus of Operative Facts

The plaintiff's choice of forum is ordinarily given significant weight, *id.* at 107, and the Yowie entities have chosen to sue within the Eastern District. But the Yowie entities get less

deference than usual because they have chosen to sue away from home, in a forum with little or no connection to this case. *See, e.g.*, *Rindfleisch v. Gentiva Health Systems, Inc.*, 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010) (Bianco, J.); *see also* 15 WRIGHT & MILLER § 3848 (4th ed.). Neither Yowie entity has sued at home, nor do the operative facts here have much to do with this district. The only facts connecting the Yowie entities' claims to this district are that 1) the defendants sent tortious communications to New York, 2) Yowie executives had to travel to Madelaine's facility in Far Rockaway to buttress their relationship against interference, 3) part of the negotiations between Yowie and Madelaine took place in Far Rockaway, and 4) the industry magazine that published material infringing on Yowie's trademark is distributed in New York.

Moreover, these few facts hardly tie this case uniquely to the Eastern District—the communications at issue were sent from Florida, the Yowie executives traveled from Australia and the cost of those trips (presumably relevant to show damages) was borne there, and the magazine in question is distributed worldwide. To be sure, the negotiations in Far Rockaway are tied to the Eastern District—but nothing about the content of those negotiations (between Yowie and a non-party) is relevant to Yowie's claims. The relevant fact is that a business relationship existed between Madelaine and Yowie, not that anything in particular happened in Far Rockaway.

Nevertheless, one issue in this case *is* uniquely tied to the Eastern District: WCF's counterclaim for breach of contract will turn on information disclosed to Madelaine, and allegedly put to wrongful use, in Far Rockaway. Nevertheless, the Yowie entities' choice of forum is not entitled to deference on this basis, because the underlying Manufacturing Agreement requires that all actions arising out of it be brought in St. John's County, Florida (which is within the Middle District of Florida). Courts' deference to a plaintiff's choice of forum is best understood as an expression of respect for that individual's right—grounded in due process—to choose the terms

on which they seek to vindicate their own interests.[1] *See* Martin H. Redish & Nathan D. Larsen, *Class Actions, Litigant Autonomy, and the Foundations of Procedural Due Process*, 95 CAL. L. REV. 1573 (2007). That rationale is considerably weakened, however, when a plaintiff has previously agreed to litigate elsewhere, and vitiated altogether where—as here—the plaintiff has previously agreed to litigate *in the transferee forum*, with respect to the relevant claims.

Moreover, not only are the facts of this case, as a whole, only minimally tied to the Eastern District, they are largely centered on the Middle District of Florida. The allegedly tortious communications were made from there. The alleged infringing acts were committed there. The allegedly defamatory statements originated there. Moreover, those statements made claims about events in the Middle District, such that a defense of truthfulness will be tested by proof of the actual facts there. If this case has a locus of operative facts, it is in the Middle District of Florida.

3.      Convenience of Witnesses and 4. Availability of Process

According to an unrebutted affidavit, eight of the twelve anticipated witnesses in this case are residents of the Middle District of Florida. Of the remaining four, three are Australian and will have a lengthy trip to the eastern seaboard no matter where the case is tried. Only one witness, Jorge Faber (the CEO of Madelaine) is a resident of New York. And while courts will generally give more weight to the convenience of a non-party witness, and to a witness whose testimony is especially important, *see* 15 WRIGHT & MILLER § 3851, the plaintiffs have not demonstrated why Mr. Faber's testimony—which is relevant (albeit critically so) to only one of the plaintiffs' claims—is *so* important as to force eight people to travel to New York for his sake.

---

[1] This understanding would also, for example, explain why courts are generally less deferential to the initial choice of forum in cases where the plaintiff sues in a representative capacity to vindicate the rights of others— such as shareholder derivative suits and class actions—or where the plaintiff claims no interest of their own and merely initiates a procedure to determine the interests of others, as in interpleader actions. For examples, see notes 14–16 and the accompanying text in 15 WRIGHT & MILLER § 3848.

The plaintiffs also argue that Mr. Faber's importance makes it necessary to hold a trial in a forum where he may be compelled to attend. But the availability of process is neutral at best where there is no evidence that a witness will in fact refuse to testify absent a subpoena, *see, e.g.*, *ACE Am. Ins. Co. v. Bank of the Ozarks*, 2012 WL 3240239, at *12 (S.D.N.Y.). Moreover, the Yowie entities have not shown why "deposition testimony is not a viable alternative" to having Mr. Faber travel to Florida. *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 482 (S.D.N.Y. 2009). Nor is this a case where so many witnesses would have to be presented by deposition that it would amount to a trial by videotape. *Compare Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y. 2007) (Bianco, J.) (holding that deposition testimony was not an acceptable alternative when 38 out of 40 witnesses would have to testify by deposition).

5. <u>Convenience of Parties</u>

No party lives in New York. All defendants and their principals are residents of the Middle District of Florida. The two Yowie entities are residents of Australia and Delaware/Missouri, and all the Yowie witnesses will be traveling from Australia. Yowie contends that a flight from Australia to New York is more convenient than one to Orlando, but of course, for the defendants, no flight at all would be the most convenient. At best, this factor tips only slightly against transfer.

6. <u>Relative Means of the Parties</u>

Yowie is a publicly traded company with a market capitalization of about $90 million, and will have to fly its witnesses the combined breadth of North America and the Pacific Ocean whether I transfer the case or not. The defendants are small, closely held firms. This factor runs in favor of transfer.

## CONCLUSION

Of the relevant factors, several tilt strongly in favor of transfer, and none tilts strongly against. And because neither the parties nor the facts of this case have any significant connection to the Eastern District, the plaintiffs' choice of forum is entitled to far less than the ordinary deference. I find that the defendants have shown by clear and convincing evidence that transfer to the Middle District of Florida is warranted. Their motion is GRANTED.

**SO ORDERED.**

Brooklyn, New York
December 23, 2016

*Edward R. Korman*
Edward R. Korman
United States District Judge